RICHARDSON-GAY OIL COMPANY v. F. A. ASHTON, *Territorial Inspector of Oils.*

(Filed September 6, 1906.)

1. **OIL INSPECTION—Statutes Construed.** The law with reference to the inspection of oils was enacted to protect the public against the sale of unsafe and dangerous oils, and for those purposes is a remedial statute, to be interpreted so as to reasonably carry into effect its objects.

2. **SAME—Second Inspection, Not Required, When.** Where oil is brought into Oklahoma and inspected as required by law, and then stored in a warehouse outside of the limits of the territory, and there held in storage in the same barrels and in same receptacles in which it was inspected and in the same condition, and thereafter the same oil is sold to consumers within the territory; Held: that one inspection satisfies the requirements of the statute, and no second inspection is required.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Lawrence & Huston,* for plaintiff in error.

*P. C. Simons. Attorney General,* and *Don C. Smith, Ass't* for defendant in error.

STATEMENT OF FACTS

This is an action brought in the district court of Logan county by the Richardson-Gay Oil Company against F. A. Ashton, as territorial oil inspector, to restrain and enjoin the latter from inspecting two barrels of oil, or interfering with

26—Vol. 17

the sale thereof, on. the ground that the oil had been regu-larly inspected, and that no second inspection was required, under the laws of Oklahoma.    The case was submitted to the court upon the following agreed statement of facts:

"Comes now the parties hereto and agree upon a case containing the facts hereinafter set forth, upon which a con-troversy depends between said parties, and present a submis-sion of the same to this court, which said facts as agreed upon by and between said parties are as follows, to-wit:

"That said plaintiff is a corporation organized and exist-ing under the laws of the state of Texas, with headquarters at Corsicana, Texas, and engaged in the refining and selling at wholesale the products of petroleum in Texas and the neighboring states and territories.

"That plaintiff has complied with the laws of Oklahoma Territory concerning foreign corporations and has appointed one G. S. Burnett of Shawnee, Oklahoma, as its agent in said territory, who is duly authorized to accept service of process, and upon whom process of service may be made in any action, in which said corporation may be a party.

"That the plaintiff maintains an agency and a warehouse at the town of Chickasha in the Indian Territory, and at which is stored its coal-oils and gasoline for prompt ship-ment to its customers in the vicinity of Chickasha.

"That the plaintiff is engaged only in the wholesale trade, and has a number of customers in the towns and vil-lages in Oklahoma, having close and convenient railroad con-nection with the said town of Chickasha, and also a number of customers in small towns off of the railroad lines.

"That on or about the 16th day of May, 1905, the plain-tiff shipped sixty barrels of coal-oil into and through the Territory of Oklahoma to be stored in its warehouse at Chick-asha, and intended for shipment to its customers as afore-said in the Territory of Oklahoma, and consumption of the same in the Territory of Oklahoma.

"That the defendant is the duly appointed, qualified and acting territorial inspector of oils of the Territory of Oklahoma, and was such officer at all times herein mentioned, and now resides in the city of Guthrie, Logan county, Oklahoma Territory.

"That on or about the said 16th day of May, 1905, the said territorial inspector of oils inspected, examined and tested said sixty barrels of oil belonging to plaintiff at Oklahoma City in Oklahoma Territory, and said barrels of oil met all the requirements specified by the statutes of the Territory of Oklahoma, and thereupon the said defendant issued to plaintiff his certificate certifying that said sixty barrels of oil had been by him inspected and approved, and said certificate also contained the actual test of said oil, and the said defendant also fixed his brand on each and every one of said barrels of coal oil, giving the actual test with the date of his official signature upon the same. That upon the making of said inspection by the defendant the plaintiff paid to him his fees as provided by law.

"That after said sixty barrels of coal oil were inspected and approved as aforesaid, the same were forwarded to and placed in plaintiff's warehouse at said town of Chickasha for shipment to and consumption in the Territory of Oklahoma as aforesaid.

"That on or about the —— day of June, 1905, the plaintiff shipped to one of its customers at Cement, Oklahoma, two barrels of said barrels of coal oil, which had been inspected and approved by said defendant as aforesaid, the said coal oil being the identical coal oil and in the same identical barrels as when it was inspected by said defendant at Oklahoma City as aforesaid. But that said fact is not within the personal knowledge of said oil inspector or any of his deputies.

"That the said defendant immediately forbade and prevented plaintiff under the penalty of a criminal prosecution

from selling said two barrels of oil to its customers at Ce-
ment, Oklahoma, unless plaintiff should have said two bar-
rels inspected over again by said defendant and defendant
still demands the right to inspect said oil over again and
to collect his fees therefor from said plaintiff, notwithstand-
ing the fact that he had already inspected and approved and
certified to the same, and branded the barrels as hereinbefore
set forth.    That said brands upon said barrels were and are
plain and intact.

"Wherefore, both parties pray that the court hear this
case and determine whether or not the said defendant should
be restrained and enjoined from inspecting said two barrels
of oil again, or in interfering with plaintiff's selling the
same without a second inspection.

"LAWRENCE & HUSTON,

"Attorneys for Plaintiff.

"P. C. SIMONS

"Att'y General of Okla."

And upon this agreed statement the district court found
the issues for the defendant, and against the plaintiff, and
entered judgment for costs.    From this judgment, the plain-
tiff appeals.

Opinion of the court by

HAINER, J.:    The sole question presented by the record
is this:    Whether under the laws of Oklahoma oil that has
been brought into the territory and inspected, as required by
law, and then stored beyond the limits of the territory,
should be re-inspected before it can be sold within the ter-
ritory.

It is contended by the attorney general, on behalf of
the territory, that under such circumstances a re-inspection
is required, and the court below so held.    On the other hand,

counsel for plaintiff in error earnestly contends that where oil is brought into the territory and inspected in accordance with the laws of the territory, and is held in storage outside of the territory, and then sold to consumers within the territory, that it may be sold within the territory without a second inspection. A determination of this question involves an examination and interpretation of the laws of this territory with reference to the inspection of oil.

Section 1 of chapter 17, page 180, of the acts of the legislature of Oklahoma of 1903, is as follows:

"That all oils and liquids, the product of coal, petroleum or other bituminous substances or into which the product of petroleum enters, by whatever name called, which may or can be used for illuminating, heating or power purposes, manufactured in this territory, or brought into it, shall be inspected by an authorized inspector of this territory, before the same are consumed, used, sold or offered to be sold, or disposed of to merchants, consumers or other persons within this territory."

Section 3 of said act provides that:

"It shall be the duty of the said territorial inspector of oils, or his deputies hereinafter provided for, to examine and test within this territory, the safety and quality of all oils before the same shall be offered for sale by the manufacturer, vendor, or dealer, and if, upon such examination and testing, they shall meet the requirements hereinafter specified, in all cases where the oils inspected are in tanks, reservoirs, barrels, or casks, he shall issue his certificate to the person or agent in possession of such oil, certifying that said oils have been inspected and approved or rejected, as the law provides, before the same has been mixed with other oils of like tests and inserting in said certificate the actual test. And, where oils are found in packages, barrels or casks, then

he shall fix his brand, giving the actual test with the date of his official signature, upon the package, barrel or cask containing the same. If such oils, so examined or tested, shall not meet the required test as hereinafter specified, the words 'unsafe, rejected,' shall be marked in plain letters on the package, barrel, cask, reservoir or tank containing the same."

Section 8 of said act provides as follows:

"If any person in this territory shall use, sell, or dispose of to merchants, consumers, or any other persons or persons within this territory, any of the oils or fluids specified in section one of this act, without the same having been first inspected by an authorized inspector of this territory, and the barrels, casks, or packages containing the same branded by him as provided in this act, said person so offending shall be punished by a fine not exceeding one hundred dollars for each barrel, cask or package of oils or fluids aforesaid so used by, sold or offered for sale to merchants, consumers, or any other person or persons, within this territory."

Section 15 of said act provides as follows:

"The provisions of this law shall not apply to oils or fluids brought into this territory in transit for shipment to and consumption in other states or territories."

It will thus be seen from an examination of the provisions of our statute bearing upon this question, that before oil that is brought into the territory can be sold to consumers therein, it must be inspected and branded by the duly authorized inspector, and that a violation of any of the provisions of the statute is made a high penal offense.

It is admitted by the agreed statement of facts that the oil in controversy was regularly inspected by the oil inspector of Oklahoma, at Oklahoma City, and that thereafter the oil was stored in the warehouse of the plaintiff in error at Chick-

asha. It is also admitted that the two barrels of oil that were attempted to be sold to the plaintiff's consumers at Cement, Oklahoma, was the identical oil, in the identical barrels, inspected by the oil inspector at Oklahoma City.

We are unable to find any provision in the statute which requires a second inspection of oil, where it has been once regularly inspected. It being admitted that the identical oil was inspected and stored in the warehouse at Chickasha, Indian Territory, and subsequently a part of the same oil, contained in the same barrels, was attempted to be sold in Oklahoma, in such circumstances we think one inspection satisfied the requirements of the statute, and that no second inspection was required. The law with reference to the inspection of oils was enacted to protect the public against the sale of unsafe and dangerous oils, and for those purposes is a remedial statute, to be interrupted so as to reasonably carry into effect its objects.

Prior to the enactment of such statutes, it was not an offense to sell impure oils. In other words, it is purely statutory crime, and is not a crime in itself. And the statute was not intended to make an act criminal which was prior to its enactment lawful, unless it is clearly shown that such act falls within the prohibition of the statute. We think this doctrine is fully sustained by the courts that have had this subject under consideration.

In *State v. Finch,* 34 N. W. 904, the supreme court of Minnesota, in passing upon a similar question, uses the following language:

"In construing such statutes, we should be careful to distinguish between what may have been desirable in the en-

actment in order that it should effectually accomplish its purpose, and what has been really prohibited or commanded by it. Before conduct hitherto innocent can be adjudged to have been criminal, the legislature must have defined the crime, and the act in question must clearly appear to be within the prohibitions or requirements of the statute, that being reasonably construed for the purpose of arriving at the legislative intention as it has been declared. It is not enough that the case may be within the apparent reason and policy of the legislation upon the subject, if the legislature has omitted to include it within the terms of its enactments. What the legislature has from inadvertence or otherwise omitted to include within the express provisions of a penal law, reasonably construed, the courts cannot supply."

*State ex rel. Waters-Pierce Oil Co. v. Baggot,* 8. S. W. 737, was a proceeding in mandamus, and the question there arose whether oil could be transferred from a branded cask to an unbranded receptacle and sold from such unbranded receptacle, and the supreme court of Missouri, in passing upon this question, uses the following language:

"We fail to find anything in the statute which prohibits the transfer of the fluid, in whole or in part, from a branded cask to an unbranded receptacle, or which prohibits the sale of it from such unbranded receptacle. Unless the law so declares, it may be done. *Woodworth v. State,* 4 Ohio St. 488; *Cheadle v. State,* Id. 478. The argument against this conclusion of most merit is that the detection of violations of the law will be rendered difficult. This may be true, to some extent; but it is not the test by which the statute must be tried. The theory of the respondent would prevent the sale of oils designed for illuminating purposes in any other way than in branded packages, so that the consumer would be required to buy a whole package or none. The law does not prohibit breaking bulk after inspection, for purposes of sale

and one inspection is sufficient, and we conclude the retail dealers may purchase from branded tanks and sell the same to consumers without any other or further inspection or branding."

In *Waters-Pierce Oil Co. v. State,* 18 S. W. 57, the supreme court of Arkansas, in construing the statute of that state which provides that illuminating oils manufactured in or brought into the state, shall be inspected and approved by an authorized inspector, and the barrels, casks, and packages containing the same shall be branded by him with the words "Standard Oil," and which provides that if any person or persons in that state shall sell any of the fluids therein specified, without first having the same inspected by an authorized inspector of that state or some other state, shall be punished etc., it was held that the statute, which must be strictly construed, does not prevent the owner, after his oil has been properly inspected and branded by an inspector of another state, from transferring it to another receptacle, and selling it therefrom without re-inspection and re-branding.

Applying the principles announced in these cases to the admitted facts upon which this case was tried, we are clearly of the opinion that the plaintiff was entitled to the relief prayed for, and therefore the court erred in rendering judgment for the defendant.

The judgment of the district court is reversed, and the cause remanded, with directions to render judgment for the plaintiff.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.